### THE W. F. BABCOCK.

#### GRAVES et al. v. THE W. F. BABCOCK.

#### (District Court, S. D. New York. March 1, 1897.)

SEAMEN'S WAGES—DESERTION—COMMITMENT THROUGH CONSUL—HONOLULU—FAILURE OF PROOF—CONSUL'S CERTIFICATES NOT EVIDENCE—REV. ST. § 4600—CONSULAR EXAMINATION REQUIRED.

On the ship's arrival at Honolulu, four men at different times, not appearing at the hour of commencing work in the morning, were within a few hours afterwards arrested as deserters by the police authorities at Honolulu on request of the consul, and kept in prison from 10 to 20 days, until the ship sailed. On arrival at New York, and on suit for their wages, an offset was presented for (1) rewards for detection, (2) arrest by the police, (3) board while in prison, and (4) the employment of a stevedore in place of each seaman while in prison, at $2.50 a day. The seamen denied any intent to desert; the master had no personal knowledge, but only that desertion was reported to him; nor was any record produced of any examination before the consul, such as is required by section 4600 of the Revised Statutes. *Held*, (1) that the evidence of desertion was insufficient; that the mere certificates of the consul were not legal evidence; (3) that no such offsets as are claimed could be allowed, except on proper legal proof of their necessity, and of a substantial compliance with the statutory requirements.

Boddine & Lee, for libelants.
Jones & Govin, for claimants

BROWN, District Judge. To the claims of the above four seamen for wages, counter claims are set up for the cost of their arrest as deserters and of their confinement at Honolulu until the ship sailed for New York on February 26, 1896. The items charged in the log against Graves are as follows:

| | |
|---|---|
| For reward paid for detection.................................. | $10 00 |
| For arrest by the police...................................... | 6 00 |
| For 21 days' detention in prison.............................. | 21 00 |
| For supply of a man in his place at $2.50 per day, 18 days..... | 45 00 |
| For breaking window.......................................... | 20 00 |
| | $102 00 |

These charges exceed the wages earned during the following four months.

The charges against the other libelants are similar, except that against two of them $20 each is charged for detection. All the men deny any intention to desert. Three of them, as appears from the testimony, went ashore at night, by leave, but got into a drunken

spree with friends on vessels near by; and not having returned at the hour when work was resumed on the ship the next morning, complaint was immediately made against them as deserters before the consul, and before noon they were arrested and lodged in jail: Graves and Donnelly on February 5th, and confined 21 days; and Bauer on February 20th, and confined 6 days. The fourth man, Bradley, had been ashore without leave early in the morning of February 10th to see the British consul, and was arrested by the police as a deserter on his way back to the ship.

There is no proper or sufficient proof of an intention by any of the men to desert. The master's testimony on this point is all hearsay, depending on reports of the mate, who left the ship and was not examined. The mate, he says, reported the men absent and their clothes missing. The weight of evidence certainly shows that the report in the latter respect was mistaken; the men's clothes were in bags in the forecastle all the time (except a couple of articles which one of the men had taken ashore to sell), and were there when the men returned to the ship February 26th.

The evidence does not satisfy me that there was any proper inquiry or finding by any one as to the fact whether the men, or any one of them, had deserted. Section 4600 of the Revised Statutes makes it the duty of consular officers "to reclaim deserters," and to employ the local authorities to that end. No express authority is given to lodge deserters in foreign prisons. But that section requires that "in all cases where deserters are apprehended, the consular officer shall inquire into the facts."

In the master's deposition appears a copy of a letter stating as follows:

"Shortly after the arrival of the ship W. F. Babcock several of the crew deserted. At the request of this office they were arrested and lodged in jail, where they complained to me of ill treatment at the hands of the mate. I summoned the master, and mate, also the men to appear before me. After a full investigation found the charges to be without foundation. Their jail fees, rewards offered for them, etc., have been looked over by me and found to be correct as per vouchers.

"[Signed]          Ellis Mills, General Consul."

This letter was objected to, and it is not legal or competent evidence as to the matters of fact stated in it. I have deferred the decision of the cause to permit evidence of any docket or record of inquiry as to the alleged desertion to be offered; instead of that a further certificate is offered under the seal of the consul, dated January 19, 1897, stating that in the month of February, 1896, complaints were successively made to him by the master that the above-named libelants had deserted,—

"Whereupon at the request of the master I issued requests to the marshal of this government for the arrest and detention of these men, and they were afterwards brought before me, and it then and there having been made to appear to my satisfaction that the aforesaid complaints were true * * * and that the seamen had deserted said vessel, and absented themselves without leave, whereupon at the request of the said master the said seamen were remanded to the jail at Honolulu to remain there until the said vessel should be ready to proceed on her voyage or till the master should require their discharge, and then to be delivered to the said master, he paying all the costs of said commitment and deducting the same out of the wages due to said seamen. And I

further certify that the reason for my action was because I was satisfied that unless they were so detained they would again desert.

"Ellis Mills, Consul General."

This paper has not the appearance of having been prepared from any docket, record, or notes remaining in the consul's office. It does not purport to be a copy of any such record or notes; no dates, other than the month are given, and there is no direct statement that the consular officer made any inquiry into the facts. The latter part seems intended to follow the provisions of section 4598, which does not apply to proceedings before consular officers, but to proceedings before justices of the peace within the United States. In the case of The Coriolanus, Crabbe, 239, Fed. Cas. No. 7,380, Judge Hopkinson said: "I never suffer these certificates to be read; they are infinitely weaker than ex parte depositions."

To make proceedings before the consul evidence, there must be either a duly-proved copy of his record, or else his deposition, as in the case of other witnesses. These papers are neither, and must, therefore, be disallowed as evidence.

The testimony of all the men, moreover, is very explicit that there was no examination before the consul as to the fact of desertion; but only a hearing upon a complaint of ill treatment made to him by Burns, another seaman, upon which three of the men were called before him while they were in jail, and before Bauer was arrested, as witnesses on that charge. The master's testimony confirms this fact, and supports the testimony of the libelant Bauer, that he was never taken before the consul at all; and if that was the case with Bauer, it is fair to conclude that it was the same with the others, and that they were sent to jail on the master's complaint alone, without inquiry before the consul into the fact of desertion either before imprisonment or afterwards. This is not such an inquiry as section 4600 demands. All the items charged against the seamen based upon the ground of alleged desertion must, therefore, be disallowed.

The haste with which the proceedings against these men were taken; the absence of any genuine inquiry into the fact of desertion; the disclaimer of the men at the time of any intent to desert; the lack of any request and even of any option given to the men when arrested to return to the ship, or opportunity to show that the delay of a few hours in returning was due to drunkenness only, render the procedure against these seamen apparently a very harsh one, and make quite natural, if not legally justifiable, their subsequent violence in speech and act. Whether the men were deserters or not, they could not lawfully be thrown into prison without such an inquiry and opportunity to be heard as the statutes provide. And when such measures are taken by the master with a view to confiscating the wages of seamen for several months succeeding, he must take good care to collect and preserve for his defense, and for the defense of the ship, sufficient legal evidence to show both the necessity for such proceedings, and a substantial compliance with all the statutory requirements to justify it.

Under sections 4603 and 4596 I might impose a small discretionary fine for the two or three hours, which is all the voluntary absence

proved against these men; but in view of their imprisonment, no fine should be imposed. When the ship was ready to sail on February 26th, the men were brought on board in irons. On the way to the ship, Graves, Donnelly, and Bradley, for the purpose of securing their further detention in Honolulu, broke a plate-glass window in one of the stores, for which the captain was obliged to pay $60. For this unlawful act, each of the three men should be charged with his share, viz. $20. No other offsets being legally established, they are entitled to the residue of their wages, as follows:

To Graves...............................................$62 67
 " Donnelly ............................................. 61 27
 " Bradley ............................................. 61 17
 " Bauer ............................................. 67 62

—with interest from June 29, 1896.

A decree may be entered accordingly, with costs.